UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DAVID J. DIXON STP-18-01-0194, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-00910-JMS-TAB |
| | ) | |
| DUSHAN ZATECKY Warden, Pendleton Correctional Facility, | ) ) | |
| | ) | |
| Respondent. | ) | |

**Order Denying Petition for Writ of Habeas Corpus and
Directing Entry of Final Judgment**

The petition of David J. Dixon for a writ of habeas corpus challenges a prison disciplinary proceeding identified as No. STP-18-01-0194. For the reasons explained in this Order, Mr. Dixon's habeas petition must be **denied**.

**A.    Overview**

Prisoners in Indiana custody may not be deprived of good-time credits, *Cochran v. Buss,* 381 F.3d 637, 639 (7th Cir. 2004) (*per curiam*), or of credit-earning class, *Montgomery v. Anderson,* 262 F.3d 641, 644-45 (7th Cir. 2001), without due process. The due process requirement is satisfied with the issuance of advance written notice of the charges, a limited opportunity to present evidence to an impartial decision-maker, a written statement articulating the reasons for the disciplinary action and the evidence justifying it, and "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *Wolff v. McDonnell,* 418 U.S. 539, 570-71 (1974); *Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003); *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000).

### B. The Disciplinary Proceeding

On January 22, 2018, Sergeant Patton reviewed a recorded telephone call from January 7, 2018, between Mr. Dixon and a friend of Mr. Dixon, Alexis Hines, and determined that they were speaking in code about bringing something inside the prison. *See* dkt. 9-1; dkt. 9-7 at 1. Internal Investigations reviewed video tape of a visit on January 7, 2018, between Mr. Dixon and Ms. Hines. Based on the video review, Sgt. R. Patton wrote a Conduct Report charging Mr. Dixon with A-113, trafficking. Dkt. 9-1. The Conduct Report states:

> On 1/22/18 during a review of Offender Dixon, David IDOC# 111218 phone call history, Sgt. R. Patton heard Dixon speaking to Alexis Hines in code about what is believed to be details on trafficking an unknown substance into the facility on past occasions. During a camera review of his visit on 1/7/18, Hines opens a bag and places it on the table at the beginning of the visit. She leaves the table as Dixon approaches. Dixon sits down and picks up the bag. He digs in the bag and then places something into his jumpsuit pocket. End of report.

*Id*.

Mr. Dixon was notified of the charge on January 29, 2018, when he received the Screening Report. Dkt. 9-2. He pleaded not guilty to the charge, requested a lay advocate, and did not request any witnesses. *Id.* He requested the "phone conversation between Dixon & Hines" and the "camera footage saved in DHB folder ('Dixon111218[']')" as physical evidence. *Id.* He also waived his right to 24 hours' advance notice before the disciplinary hearing. *Id.* Mr. Dixon signed the Screening Report. *Id.* Mr. Dixon was provided with a lay advocate, inmate Christopher Cooley. Dkt. 9-5.

The disciplinary hearing board determined that allowing the offender to view the video recorded evidence would jeopardize the safety and security of the facility, so a summary of the video recording was prepared. Dkt. 9-8. The video summary stated:

> On the above stated date/time/location, video evidence shows Alexis Hines approach a visitation table with a bag, sits down at the table, opens the bag, place

2

> the bag on the table and exits the table. Offender Dixon approaches the table, sits down, picks up the stated bag, digs in it several times and proceeds to take an item out and place it in his jumpsuit pocket.

Dkt. 9-8.

The Court reviewed the video, which was submitted *ex parte*. Dkt. 13 (*ex parte*). The video summary prepared by the disciplinary hearing board accurately summarizes the video. *Id.* The video shows Ms. Hines arriving first and buying something from the vending machine. She sets a snack bag and two soda cans on the table. While sitting at the table, she takes various items out of her pockets. Ms. Hines opens the bag with the last three fingers of her right hand still held against her palm. Ms. Hines then puts her right hand into the bag and takes a chip out to eat it and her fingers are no longer held against her palm. Ms. Hines sets the food bag up against a drink can on the far side of the table from her and waits. Just as Mr. Dixon gets done checking in at the door, Ms. Hines leaves the table and stands in front of a vending machine. Mr. Dixon sits down and looks inside the bag. Mr. Dixon eats one thing from the bag and wipes his hands. Mr. Dixon looks in the bag again and puts his hand in and out. This time, however, after Mr. Dixon reaches in the bag and brings his hands to his mouth, his hands brush past and put something in the front pocket of his overalls before he brushes his hand on his pants. Thereafter, Mr. Dixon proceeds to eat from the bag without looking at what he pulls out of the bag.

The prison disciplinary hearing was held on September 11, 2017. According to the notes from the hearing, Mr. Dixon argued, "What did I traffic There isn't enough evidence for this conduct." Dkt. 9-6. Based on the staff reports and the physical evidence from the video and phone conversation, the hearing officer found Mr. Dixon guilty of A-113, trafficking. The sanctions imposed included 105 days of earned credit time deprivation, a credit class demotion from B to C,

and the imposition of the suspended sanction of 90 days of earned credit time deprivation from disciplinary case No. STP-17-12-0190. *Id.*

Mr. Dixon appealed to the Facility Head and the Indiana Department of Correction (IDOC) Final Reviewing Authority, both of which were denied. He then brought this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**C.      Analysis**

Mr. Dixon's habeas petition challenges his prison disciplinary conviction on two grounds: (1) sufficiency of the evidence and (2) he was denied a lay advocate. *See* dkt. 2. The respondent argues that Mr. Dixon had a lay advocate and there is "some evidence" to support his conviction. Dkt. 9. Mr. Dixon has not filed a reply, and time to do so has passed.

       1.      <u>Sufficiency of the Evidence</u>

Mr. Dixon argues that the entire Conduct Report is based on speculations, assumptions, and accusations, but that there is no admissible phone calls or footage of any contraband being put into or taken out of the bag of chips. *See* dkt. 2 at 3. It is unclear why Mr. Dixon believes the phone calls are not admissible, and, in any case, this argument is frivolous.

Challenges to the sufficiency of the evidence are governed by the "some evidence" standard. "[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016); *see Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted). The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is any evidence in

the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56.

Adult Disciplinary Code Section A-113, entitled "Trafficking," is defined as: "[e]ngaging in trafficking (as defined in IC 35-44.1-3-5) with anyone who is not an offender residing in the same facility." Indiana Department of Correction Adult Disciplinary Process, Appendix I: Offenses, available at http://www.in.gov/idoc/files/02-04-101_APPENDIX_I-OFFENSES_6-1-2015(1).pdf. IC 35-44.1-3-5 defines a person who commits trafficking to be "[a] person who, without the prior authorization of the person in charge of a penal facility or juvenile facility, knowingly or intentionally: (1) delivers, or carries into the penal facility or juvenile facility with intent to deliver, an article to an inmate or child of the facility."

Here, the Conduct Report explained that Sgt. R. Patton heard Mr. Dixon speaking to Ms. Hines in code. During a camera review, Sgt. Patton saw Ms. Hines place an item into a bag. Mr. Dixon later removed an item from the bag. The video evidence is consistent with the Conduct Report. It is irrelevant that the item was not specifically identified because IC 35-44.1-3-5 merely requires that a person without prior authorization knowingly delivers *an article* to an inmate. An item that is transferred through a bag of chips fits this standard. This is "some evidence," under *Ellison,* supporting the hearing officer's finding that Mr. Dixon was guilty of trafficking. Accordingly, habeas relief is not available to Mr. Dixon on this ground.

### 2. Lay Advocate

With respect to Mr. Dixon's claim that his lay advocate was "never present or listed as requested," dkt. 2 at 4, the record reflects that Mr. Dixon was given a lay advocate, inmate Christopher Cooley. Dkt. 8-2 at 2.

Even if Mr. Dixon was not given a lay advocate, the denial of a lay advocate would not violate his due process rights. "[D]ue process d[oes] not require that the prisoner be appointed a lay advocate, unless 'an illiterate inmate is involved . . . or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case.'" *Miller v. Duckworth*, 963 F.2d 1002, 1004 (7th Cir. 1992) (quoting *Wolff*, 418 U.S. at 570); *see also Wilson-El v. Finnan*, 263 Fed. Appx. 503, 506 (7th Cir. 2008).

Mr. Dixon does not argue that he is illiterate or that the issues in this case was so complex as to require a lay advocate. Rather, he has fully briefed the issues on his own, demonstrating his literacy, and the charge in the disciplinary hearing was not complex – he engaged in trafficking during a prison visit with Ms. Hines. Accordingly, there is no due process violation and habeas relief is not available to Mr. Dixon on this ground.

**D.     Conclusion**

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Dixon to the relief he seeks. Accordingly, Mr. Dixon's petition for a writ of habeas corpus must be **denied** and the action dismissed.

Judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date: 7/27/2018

*[Signature: Jane Magnus-Stinson]*

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

DAVID J. DIXON
111218
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Katherine A. Cornelius
INDIANA ATTORNEY GENERAL
katherine.cornelius@atg.in.gov